[L. A. No. 16811. In Bank.—December 29, 1938.]

RICHARD H. HALL, Petitioner, v. THE STATE BAR OF CALIFORNIA, Respondent.

Benjamin W. Shipman for Petitioner.

Philbrick McCoy for Respondent.

THE COURT.—This is an application to review a recommendation of the Board of Governors of The State Bar that petitioner be disbarred.

The record shows that in 1936 Benjamin Zimmer, the owner of a cafe in Hollywood, consulted his attorney, Louis Feinstein, to obtain legal services and a loan of money. Feinstein lent him about $300 and incorporated the business. In return for this assistance he was to receive a share in the net profits.

In January, 1937, Zimmer came to Feinstein for further aid, and a plan was devised and carried out whereby Feinstein drew checks to third parties, which Zimmer discounted to obtain money. Feinstein had no sufficient funds to cover such checks, and Zimmer undertook to cover them with cash deposits at the time they cleared. Later Feinstein gave Zimmer the names of Morgan, a former client, and petitioner Hall, Feinstein's office assistant, as other prospects for these "loans", and Zimmer was successful in inducing them to go through the same procedure, for a money consideration.

Hall wrote five checks, two on his own "trust account" for a total of $950, and three on the account of Acme Collectors, a client, for a total of $975. The first two were made payable to Feinstein and the other three to Zimmer. Hall owed nothing to either payee and fully understood that the checks were to be used by Zimmer to obtain money from third persons. The accounts on which the checks were drawn contained only a few dollars, and of course Hall had no authority from his client to use its account for this purpose. Hall, following Feinstein's procedure, struck the word "order" from the checks, to destroy their negotiability. At Zimmer's suggestion, Hall dressed up the checks to make them look legitimate by making fictitious notations in the upper left-hand corner, such as "% collection $325.00", "½ fee $475.00", and "Hamel & Jordan, ½ fee $475.00". For his efforts Hall was to receive $50, and Zimmer gave him a check for that sum, which was never paid.

Ultimately the Hollywood State Bank suffered a substantial loss. Zimmer's fraudulent practices were discovered, and he and certain other persons were prosecuted and convicted. (See *People* v. *Zimmer*, 23 Cal. App. (2d) 581 [73 Pac. (2d) 923].) Feinstein was also prosecuted, and coincidentally orders to show cause were issued by the local administrative committee of The State Bar directed against Feinstein and Hall. The cases were consolidated for hearing, and the committee recommended disbarment for Feinstein and a public

reprimand for Hall. The board of governors adopted the findings with certain amendments, but recommended disbarment for both. Meanwhile the prosecution of Feinstein resulted in his conviction (see *People* v. *Humphrey,* 27 Cal. App. (2d) 631 [81 Pac. (2d) 588]) and disbarment followed automatically. (See *Feinstein* v. *State Bar,* L. A. No. 16813, this day filed.) (*Ante,* p. 461 [85 Pac. (2d) 869].)

We are therefore presented with the petition of Hall alone.

From the foregoing review of the facts it is clear that Hall was guilty of the same fraudulent practices as Feinstein, and the local administrative committee found that both were guilty of acts involving moral turpitude. Moreover, the entry of the fictitious transactions on the face of the checks shows a full knowledge of their intended fraudulent use, and a deliberate purpose to aid in the deception of the contemplated victims. And it should further be remembered that Hall was to receive payment for these "loans", and did get the one check of $50 for Zimmer.

Hall does not deny the substance of the charges against him, and frankly admits that his conduct was "foolish and unwise" and that he is "ashamed" of his part in the transaction. But he asserts that he had no intention of injuring anyone, and that he honestly believed, from the statements of Feinstein and Zimmer, that the checks would be paid. In brief, his main defense is his youth, inexperience, and faith in his friend and employer, Feinstein. This defense is well stated in the following findings of the local administrative committee:

"After January 29, 1937, which was the date of the last of the aforesaid five checks given by Morgan to Zimmer, Zimmer again called upon Feinstein to inquire if he, Feinstein, knew of any other person that would be willing to enter into similar check transactions; Feinstein then introduced Zimmer to respondent Hall. For several years prior thereto Hall had been acquainted with Feinstein, who had befriended Hall personally by advancing him money for the necessities of life and professionally by giving Hall legal employment as process server while Hall was studying law, and later by giving him office space in Feinstein's law suite; for these favors Hall had a deep and genuine sense of obligation to Feinstein, which Feinstein knew. Moreover, Hall was immature in judgment and inexperienced in the practice of law, having then prac-

ticed less than three years, and of this Feinstein was likewise aware. In fact, the combination of Hall's immaturity, inexperience and his sense of obligation, made Hall a tool in the hands of Feinstein; consequently, Feinstein's introduction of Zimmer to Hall made Hall pliant and acquiescent to Zimmer's request for checks to be used in transactions similar to the ones previously had between Zimmer and Feinstein and Zimmer and Morgan.''

Our problem is therefore not one of law; we are called upon to determine what is the proper measure of punishment for a clearly improper act. Whatever the motives may have been, the acts were not slight infractions of rules of ethics, but were deliberate and intentionally fraudulent acts involving moral turpitude. This being so, we cannot agree with the local committee that a reprimand is a sufficient punishment. But where the extreme penalty of disbarment is invoked, we think it proper to take into consideration the youth of petitioner and the circumstances in which he was placed by his close association with Feinstein. Hall was but 33 years of age, and in practice less than three years. It is no excuse that he followed the suggestions of Feinstein, but this fact distinguished him in some degree from an experienced and calculating offender.

In short, we believe that it is still possible for Hall to redeem himself if permitted to return to practice, and that disbarment is not the appropriate penalty under all the circumstances. In this view we are supported by the local committee and by four members of the board of governors who felt that the punishment was too severe. After careful deliberation we have concluded that a substantial period of suspension is adequate punishment for petitioner's offense.

It is therefore ordered that petitioner be and he is hereby suspended from the practice of the law in this state for a period of three years commencing February 1, 1939.

Rehearing denied.