[S.F. No. 22587.   In Bank.   June 14, 1968.]

PHILIP STEINER, Petitioner, v. THE STATE BAR OF CALIFORNIA, Respondent.

---

*Retired Associate Justice of the Supreme Court sitting under assignment by the Chairman of the Judicial Council.

Barbieri, Giometti, McCarthy & Steiner, Robert J. Barbieri, Marvin G. Giometti, Robert I. McCarthy, A. Brooks Berlin and Bert W. Levit for Petitioner.

F. LaMar Forshee and Herbert M. Rosenthal for Respondent.

THE COURT.—This is a proceeding to review a recommendation of Disciplinary Board I of the State Bar of California that petitioner be suspended from the practice of law for one year and that such suspension be stayed on conditions of probation, with actual suspension during only the first 60 days.

The recommended discipline is based upon petitioner's alleged misappropriation of at least $242.40 belonging to a client, Emil Steiner (no relation to petitioner), and on his intentionally misleading a State Bar preliminary investigation committee considering a complaint against him.

Petitioner contends that the evidence is insufficient to sustain the board's findings. ▮ Findings of fact made by local administrative committees and disciplinary boards are not binding on this court, which may weigh the evidence upon which the findings rest. (*Zitny* v. *State Bar*, 64 Cal.2d 787, 789 [1] [54 Cal.Rptr. 825, 415 P.2d 521].)

▮ As stated by this court in *Zitny*, at page 790 [2, 3]: "The burden is on the petitioner, however, to demonstrate that the findings are not supported by the evidence or that the recommendations are erroneous or unlawful. [Citations.] In

meeting this burden, the petitioner must demonstrate that the charges of unprofessional conduct are not 'sustained by convincing proof and to a reasonable certainty.' [Citation.] ▇ In making our determination we resolve all reasonable doubts in favor of the accused. If two or more equally reasonable inferences may be drawn from a proved fact, the inference leading to a conclusion of innocence rather than the one leading to a conclusion of guilt will be accepted. [Citations.] ''

The record shows that petitioner was admitted to practice law in this state on March 2, 1948. During the latter part of 1960, Emil Steiner employed petitioner to represent him on a claim for damages for personal injuries he had sustained in an automobile accident on October 10, 1960. Emil was a member of the Kaiser Foundation Health Plan, and he was treated for his injuries by the Kaiser Foundation Hospitals-Permanente Medical Group.

Emil agreed to pay petitioner 33⅓ percent of any recovery effected before trial commenced or 40 percent of any recovery after trial commenced. Petitioner was to advance costs, and Emil was to pay all medical bills from his share of any recovery. Emil further authorized petitioner to reimburse Kaiser, from Emil's share of any recovery, for the full amount of Kaiser's statement for services.[1]

Trial of Emil's action commenced January 27, 1964, and shortly thereafter it was settled for $9,000. Before settling the case, however, petitioner telephoned Mr. Henry Ollerdessen, Kaiser's Manager of Credit and Collections, and obtained his permission to compromise the amount of Kaiser's charges, which were at least $484.80 and possibly close to $850.

On February 25, 1964, prior to distributing the settlement proceeds, petitioner prepared an accounting sheet in his own handwriting. On it, he showed the amount of the recovery ($9,000). Then, under the heading ''less expenses incurred,'' he listed a number of expenses and ''Our fee $3,600.00,'' followed by the figure $4,486.26, representing the total expenses and fee. He then subtracted that amount from the amount of the recovery, showing a ''Net Recovery from this suit $4,513.75.'' Below the ''Net Recovery,'' he wrote, ''Less

---

[1]Under Emil's membership agreement with Kaiser, he apparently would not have been billed, and would have owed Kaiser nothing for his care and treatment, if no recovery was effected, but if recovery was effected, Kaiser was subrogated to the extent of its regular charges for the care and treatment.

your obligation to Kaiser-Permanente Medical Group per your agreement with them $484.80,'' concluding with the final entry, ''cash to you $4,028.95.''

Around March 6, 1964, petitioner signed a letter to Kaiser, bearing his dictation mark, and reading, in part, as follows: ''Enclosed is our Clients Funds Account Check No. 5097 dated March 5, 1964, to your order in the amount of $191.60.

''Your records will show that you sent over itemized statements in this action aggregating $484.80 and we had an additional bill in our file for a medical report in the sum of $30.00.

''     .     .     .     .     .     .     .     .     .     .

''During the trial of this action, I telephoned your Mr. Ollerdessen from the corridor outside the courtroom, seeking his permission to compromise the amount of this bill in view of the questionable liability with which we were dealing. He graciously gave me carte blanche in the premises. As the trial progressed, we were able to compromise the entire matter, including your bill on the basis of 50% of the total.

''Your bill then became $242.40, and from this we have retained our usual one-third fee, thus producing a subrogation recovery to your net of $161.60. No expenses were charged to your account. In addition to the $161.60 subrogation recovery, $30.00 is included to cover the cost of the medical report.'' Kaiser received this letter accompanied by a check for $191.60, also signed by petitioner.

On or about March 7, 1964, Emil received a letter from petitioner, dated March 6, 1964, enclosing a check, dated March 5, 1964, payable to Emil, for $4,028.95. No accounting accompanied the check, but on March 11, 1964, Emil went to petitioner's office and was shown a copy of the accounting sheet. He then made a copy of it for his own records.

On April 21, 1964, Emil wrote Kaiser Foundation Health Plan, mentioning that the case had been settled and that petitioner had sent Kaiser a check for $484.80 to cover Emil's obligation to Kaiser. Apparently believing he was entitled to a refund under the Health Plan, Emil added, ''I hope to get the refund due to me real soon.'' He requested copies of any bills which had been sent to petitioner and paid by him.

By a letter dated April 29, 1964, Mr. Ollerdessen, of Kaiser, informed Emil that he would not receive a refund, inasmuch as his claim had been settled for an amount less than the cost of the care.

Shortly after receiving Mr. Ollerdessen's letter, Emil visited him at his office in Oakland and was advised that Kaiser had received $242.40, rather than $484.80, from petitioner. At Emil's request, Mr. Ollerdessen gave him a letter, dated May 4, 1964, certifying that Kaiser had received from petitioner $242.40, plus $30 for the medical report, in full satisfaction for the billings submitted.

Emil thereupon concluded he had been "shortchanged" and went to the district attorney's office. That office sent him to the State Bar.

On August 28, 1964, a State Bar local administrative committee notified petitioner by letter that Emil had filed a complaint against him and that the matter was pending before the committee for its determination whether preliminary investigation was warranted. The committee sent petitioner with the letter a statement of the alleged facts involved in the complaint and advised him that to aid the committee he might submit a written statement relative to the complaint.

Immediately after receiving the committee's letter, petitioner telephoned Mr. Ollerdessen. According to the latter, petitioner said his (petitioner's) accounts had become confused and asked that Mr. Ollerdessen write Emil "indicating that Kaiser had received four hundred some odd dollars." Petitioner, on the other hand, said he merely asked Mr. Ollerdessen to "get this thing straightened out."

On September 1, 1964, pursuant to petitioner's request, Mr. Ollerdessen wrote Emil, enclosing a copy of his letter to Emil dated May 4, 1964, and advising him that the indication therein that Kaiser had received $242.50 from petitioner was in error and they would like to correct the amount to $484.80.

On cross-examination, Mr. Ollerdessen expressed uncertainty as to what petitioner wanted him to write Emil and also whether he obtained the figures used in the letter from petitioner or from the Kaiser files. However, on redirect examination he confirmed that he understood petitioner's request as being to write Emil and advise him that Kaiser had received a greater amount than that in fact received.

After his conversation with Mr. Ollerdessen, petitioner wrote the State Bar a letter, dated September 9, 1964, indicating that the obligation to Kaiser was $484.80; that the discrepancy was called to Kaiser's attention on receipt of the State Bar committee's letter; that Kaiser's manager had

informed petitioner that he had written to the complainant acknowledging their error; and that the accounting sheet showed the net recovery from the lawsuit to be $4,513.75, rather than $4,028.95 as inferred by the complainant.

Soon thereafter, Emil received a letter from the State Bar local administrative committee, dated September 25, 1964, advising him that the committee had concluded there were insufficient facts to warrant preliminary investigation of his complaint.

On October 4, 1964, Emil wrote a confidential letter to the Board of Directors of the Kaiser Foundation Health Plan, in which he outlined the above mentioned correspondence, set forth the figures furnished him by Mr. Ollerdessen (first $242.40, then $484.80), and cited information showing that the payment was actually $191.60. Kaiser investigated the matter and asked Mr. Ollerdessen to resign. He did not do so, but Kaiser terminated his employment.

Thereafter, Emil returned to the State Bar, and the present proceeding followed.

On April 29, 1965, after petitioner had appeared before the preliminary investigating committee, he wrote Emil, sending him a check for $212.40. In his letter, he stated that the $212.40 represented the difference between $484.80, the amount Kaiser ''originally agreed to accept,'' and $242.40, the ''amount they ultimately accepted.''[2]

After a further hearing, held before the local administrative committee December 2, 1965, Emil wrote petitioner seeking full payment. Petitioner finally, after the committee's last meeting held May 3, 1967, paid Emil $110.80, which the committee had noted he still withheld.

■ Petitioner seeks to explain that the errors in disbursing Emil's funds occurred through innocent oversight and that he had no intention to appropriate the funds erroneously withheld. He also contends that he had no intent to mislead the State Bar.

The local administrative committee considered and evaluated petitioner's explanations, as well as all the testimony and evidence before it, and found against him. In its report of

[2]The amount of $212.40 is obviously not the difference between $484.80 and $242.40, nor is it the real difference petitioner owed Emil ($484.40 less $161.60). (Petitioner had deducted $30 for the medical report in the February 1964 accounting and then charged Emil for it again in connection with the Kaiser settlement.)

December 9, 1966, the committee reviewed the evidence and concluded that it was unlikely the discrepancy could have been the result of an oversight.

In the committee's report of December 9, 1966, it was stated, in part: "At the last hearing in this matter, Respondent pointed out that he had paid the sum of Five Hundred Dollars ($500.00) to David Steinhardt, M.D., on March 5, 1964, in connection with Dr. Steinhardt's services in this matter. . . . No charge was made to Emil Steiner for this remittance to Dr. David Steinhardt. Respondent testified that the payment was made to Dr. Steinhardt, a staff physician of the Kaiser-Permanente Medical Group, for his special management or handling of the Emil Steiner case and case file at Kaiser-Permanente Medical Group, and that he could have but did not charge this payment against the net recovery due to Emil Steiner.

"The Committee need not resolve the question whether the payment to Dr. Steinhardt would have been a proper charge against Emil Steiner by the Respondent. It is enough to say that Respondent chose, with full knowledge of the facts, not to charge that sum to Emil Steiner in his accounting. The Committee is of the view that Respondent's misaccounting with respect to the Kaiser settlement may in part be explained by the fact that Respondent had assured Emil Steiner of a net recovery to Emil Steiner, after all disbursements, of Four Thousand Dollars ($4.000.00) ; that Respondent considered himself under an obligation to pay $500.00 to Dr. Steinhardt; and that the inclusion of that charge against Emil Steiner would have brought questioning from Emil Steiner and also have reduced the net disbursements to Emil Steiner below $4.000.00. Accordingly, the Committee believes, Respondent misstated the Kaiser settlement to Emil Steiner in order to recover part of the honorarium paid to Dr. Steinhardt which Respondent apparently deemed himself unable to charge back to Emil Steiner, and yet to keep the net disbursement to Emil Steiner above $4,000.00."

On May 3, 1967, a further hearing was held and additional evidence received. Thereafter, another report, dated May 16, 1967, was made, in which the committee again concluded that it was unlikely the discrepancy could have been the result of an oversight.

At the May 3, 1967, hearing, Arlene Hartman, who had

been petitioner's secretary at the time of the events hereinabove related, testified that petitioner gave her the disbursement sheet at the time he prepared it, and that it was her duty to verify it and write out the checks. She said that she called Kaiser to verify the amount payable for the hospital bill and was told that the amount of their bill was $484.80, but that they had agreed to settle for half of that amount. She said that she then wrote a check for the amount Kaiser gave her, less petitioner's one-third fee, plus $30 charged by the hospital for the medical report, but that she neglected to correct the disbursement sheet.

Mrs. Hartman also testified that when petitioner's letter dated September 9, 1964, to the State Bar was composed, the information included therein was taken from the disbursement sheet, which was assumed to be correct.

Based upon the record herein, this court is of the opinion that a showing that petitioner intended to misappropriate his client's funds has not been made "by convincing proof and to a reasonable certainty," but that in his dealings with his client and with the State Bar petitioner failed in some respects to meet the high standards demanded of members of the legal profession and should be disciplined therefor.

Under the circumstances, however, this court believes that a public reprimand is sufficient. This opinion shall serve as such a reprimand.