[L. A. No. 29625. In Bank. Nov. 18, 1969.]

JEROME REZNIK, Petitioner, v.
THE STATE BAR OF CALIFORNIA, Respondent.

**COUNSEL**

Jerome Reznik, in pro. per., for Petitioner.

F. LaMar Forshee and Herbert M. Rosenthal for Respondent.

**OPINION**

**THE COURT.**—This is a proceeding to review a recommendation by the State Bar Disciplinary Board that petitioner be suspended from the practice of law for a period of three years on conditions of probation, including actual suspension during the first year.

The recommended discipline is based upon petitioner's professional

misconduct during a civil action in seeking to mislead the court and opposing party for his own advantage, thus violating his oath and duties as an attorney (Bus. & Prof. Code, §§ 6067, 6068, 6103) and committing acts involving moral turpitude (Bus. & Prof. Code, § 6106). Specific findings were made that on or about December 7, 1965, petitioner had delivered his personal check number 153, in the amount of $200, drawn on his account at North Palm Canyon Drive Branch of Security First National Bank, to the payee Sackley; that on December 8 Sackley had endorsed the check and deposited it to his account in the City National Bank, Palm Springs Branch; that on December 22, petitioner had instituted a suit against Sackley in the small claims court for the recovery of this $200, declaring that "defendant was to cash check only upon execution of Architect-Owner Agreement"; that upon the transfer of the action to the municipal court by defendant Sackley, petitioner filed a verified answer to the complaint and cross-complaint in that action, attaching as Exhibit A a reproduction of the check which showed on the reverse side the notation "Valid upon execution of agreement"; that by the use of said exhibit and the allegations in his pleading petitioner represented to the court that this notation was on the check at the time he delivered it to Sackley and that Sackley had cashed the check in violation of this restriction; and that "In fact, said check did not bear the notation" nor any notation of similar import at the time petitioner delivered it to Sackley. Further findings were made that:

"10.    [Petitioner] deliberately, knowingly, and for the purposes of deceiving the court and in his own financial and pecuniary interest altered the said check, after it had been returned to him cancelled, and thereafter attached a copy of said check to said answer and cross-complaint for said purpose of misleading the court and with the intent to defraud said Sackley.

"11.    [Petitioner] thereafter knowingly falsified and attempted to thus conceal the fact of his said alteration of said check by his testimony and declarations under oath as follows: (a) By verifying the validity of said false and altered check; (b) By filing, as an officer of the court, said pleading, known to him to be false, with the court for the purpose of deceiving the court in the administration of justice and of defrauding the adverse party."

Petitioner contends that the evidence is insufficient to support the findings; that no injury or loss was suffered by any third person as a result of the alleged misconduct; that the long delay in the completion of the disciplinary proceedings is in itself an abuse of the State Bar's powers and a form of discipline against him; and that the discipline recommended is too severe for the offense charged.

In reviewing a disciplinary proceeding this court passes upon the

sufficiency and weight of the evidence. It is not bound by the findings of fact of the local committee or of the board. All reasonable doubts will be resolved in favor of the accused and if equally favorable inferences may be drawn from a proven fact, the inference which leads to a conclusion of innocence rather than one leading to a conclusion of guilt will be accepted. (*Most* v. *State Bar,* 67 Cal.2d 589, 596 [63 Cal.Rptr. 265, 432 P.2d 953.) ■ The burden, however, is upon the petitioner of showing that the board's findings are not supported by the evidence or that its recommendation is erroneous or unlawful. (*Corn* v. *State Bar,* 68 Cal.2d 461, 462 [67 Cal.Rptr. 401, 439 P.2d 313].) In meeting this burden the petitioner must demonstrate that the charges of unprofessional misconduct are not "sustained by convincing proof and to a reasonable certainty." (*Steiner* v. *State Bar,* 68 Cal.2d 707, 708-709 [68 Cal.Rptr. 729, 441 P.2d 289].)

■ *Question:* One. *Was the evidence sufficient to support the findings?*

*Yes.* The crux of this proceeding is whether petitioner wrote the notation on the reverse side of the check at the time he delivered it to Sackley or after petitioner received it from his bank with his cancelled checks.

Petitioner testified that he wrote the check with his own pen and handed it to Sackley. He then took the check back because he had forgotten to write in the Arabic numerals "$200," and he picked up a different pen to write them. Before handing it back he wrote the notation on the reverse side, commented to Sackley "Just so there won't be any misunderstanding," and Sackley had nodded in agreement. Petitioner made a photoprint of the check, after it was returned to him in a cancelled condition, and attached to it his pleading in the civil action. It showed the notation on the left end of the reverse side. At the preliminary disciplinary hearing petitioner produced the check in a mutilated condition: the left end was missing. He explained that it had been chewed off by his dog. At the subsequent formal hearings petitioner did not produce the check. He explained that he had lost it. It has never been found.

The only witness who testified that he saw the notation on the check was Henry Silver, offered by petitioner as an expert witness on documents, ink and paper. He did not see the check until after it was cancelled by the bank. In his opinion the "$200" and the notation were written at the same time with the same pen, and the balance of the check with a different pen.

Sackley testified that there was no notation on the check at the time it was handed to him. There was expert evidence offered by the State Bar that there was no notation on the check at the time it was cashed by Sackley at City National Bank, Palm Springs Branch and that there was no evidence

of any erasures or alterations. Without reciting all this evidence in detail, it is sufficient to note that there was evidence of the bank's procedure of microfilming all checks deposited with it, that it had microfilmed this particular check, and that when the civil litigation arose it had made photoprints from the microfilm of each side of this check. The original microfilm was demonstrated at the hearing by a microfilm expert, the process of microfilming was explained, as was the process of backreading a check. The effect of dust particles was explained, and it was made clear that although dust could make a portion of the film appear lighter, that the portion of the film in which the check appeared lighter by reason of dust particles was not the left end of the reverse side. It was explained that it was not possible that a portion of the check could have been blocked off when microfilmed. Petitioner offered no expert evidence on the microfilm or the process. Silver was not offered as an expert on this subject. In looking at the microfilmed check he pointed to a green "dash" on the left end. He testified that when he had examined the original check there was a green line from the Security First National Bank stamp which was centered lengthwise on the reverse side, and that he had noticed that this line had extended down through the letter "n" in the word "upo*n*" in the notation. On cross-examination he conceded that the dash could be a speck of dirt obtained in the reproductive photographic process.

Even in the absence of the original check at the hearing there was clear and convincing evidence that the notation was not on the check at the time it was cashed at the bank and that it had not been altered or erased. The conclusion appears obvious that petitioner was unaware of the bank's custom of microfilming checks when he added the notation to his cancelled check. All of the findings are supported by the evidence.

■ *Question*: Two. *Is it necessary to show that a third person has actually suffered injury or loss by reason of the misconduct of an attorney before imposing disciplinary action?*

*No.* Whether any third person suffered loss in this case is not a matter of record before us. But the gravamen of the proceeding is the violation by petitioner of his oath and duties as an attorney. Section 6103 of the Business and Professions Code provides that any violation of the oath taken or of his duties as an attorney constitutes cause for disbarment or suspension. It is the duty of an attorney "To maintain the respect due to the courts of justice and judicial officers" and "To employ, for the purpose of maintaining the causes confided to him such means only as are consistent with truth, and never to seek to mislead the judge or any judicial officer by an artifice or false statement of fact or law." (Duties of attorney, Bus. & Prof. Code, § 6068, subds. (b), (d).)

Section 6106 of the Business and Professions Code provides that the

commission of any act involving moral turpitude, dishonesty or corruption, whether the act is committed in the course of his relations as an attorney or otherwise, and whether the act is a felony or misdemeanor or not, constitutes a cause for disbarment or suspension. The integrity of members of the legal profession is a matter of serious concern to this court. The legal profession and the courts, as well as the public, must be protected from those who do not measure up to their responsibilities.

■ The right to practice law may be forfeited upon a showing that a practitioner does not possess the necessary and proper moral qualifications to continue in practice. (*Prime* v. *State Bar,* 18 Cal.2d 56, 62 [112 P.2d 881].) ■ It is not necessary that actual harm result to merit disciplinary action where actual deception is intended and shown. (*Coviello* v. *State Bar,* 45 Cal.2d 57, 65 [268 P.2d 357].)

■ *Question*: Three. *Is the delay in the completion of the disciplinary proceedings an abuse of the State Bar's powers and a form of discipline against petitioner?*

*No.* Petitioner contends that the passage of time between the trial committee's first hearing on December 13, 1966, and the submission of its report on April 24, 1968, was an abuse of its powers in violation of rule 36, Rules of Procedure of the State Bar (requiring a prompt hearing), and a "cruel ordeal for the young petitioner in the formative years of his law practice."

There is no merit to these contentions. Rule 34 of the Rules of Procedure provides that continuances may be granted for not longer than 30 days or for not longer than an aggregate of 90 days, upon obtaining approval of a specified officer. The record is silent whether the trial committee obtained extensions of time pursuant to this section. Compliance was held nonjurisdictional in *Arden* v. *State Bar,* 52 Cal.2d 310, 316 [341 P.2d 6]. Petitioner did not dispute the regularity of these proceedings prior to seeking review in this court. Also the record indicates that subsequent to the hearing on December 13, 1966, a second hearing was held on February 15, 1967, at petitioner's request, to permit him to present evidence as to surrounding circumstances and mitigation and further evidence on the merits. He appeared in person and by counsel, produced no further evidence, and continued to deny culpability. The committee then filed its report and opinion and petitioner filed a statement in opposition on July 26, 1968. At his request the Disciplinary Board continued its hearing to October 18, 1968, on which date petitioner appeared in person and by counsel.

Throughout the period in which these proceedings were pending the pendency of such proceedings was kept confidential and petitioner con-

tinued in active practice. (See *Chronicle Publishing Co.* v. *Superior Court,* 54 Cal.2d 548, 567 [7 Cal.Rptr. 109, 354 P.2d 637].) Under rule 8, Rules of Procedure, State Bar of California, the proceedings are confidential until the filing with the clerk of this court of a recommended suspension or disbarment.

■ *Question:* Four. *Is the discipline recommended too severe for the offense charged?*

*No.* Petitioner was admitted to practice on January 14, 1964, at the age of 25. Immaturity and inexperience may be considered when disciplinary action is recommended. In *Hall* v. *State Bar,* 12 Cal.2d 462, 464-465 [85 P.2d 870], a young, inexperienced practitioner was involved in a fraudulent scheme which had been devised by an older more experienced attorney. He admitted that his conduct was foolish and unwise and that he was ashamed of his part in the transaction. The local committee had recommended a reprimand. This court imposed a three-year actual suspension, stating ". . . We are called upon to determine what is the proper measure of punishment for a clearly improper act. Whatever the motives may have been, the acts were not slight infractions of rules of ethics, but were deliberate and intentionally fraudulent acts involving moral turpitude. That being so, we cannot agree with the local committee that a reprimand is a sufficient punishment." In *Bryant* v. *State Bar,* 21 Cal.2d 285 [131 P.2d 523], actual suspension for 18 months was imposed in view of the attorney's inexperience and the fact that a domineering client was primarily responsible for the misdeeds. In the present case petitioner was acting for his own benefit in a personal dispute. He was not influenced by an older attorney or a domineering client. He fabricated evidence upon which to prevail in his own lawsuit, and to mislead the court. His conduct places in question his fitness to participate honestly in the administration of justice. One who does not act honestly in his personal dealings or who attempts to mislead the court in a personal matter creates doubt as to his fitness to represent others or to serve as an officer of the court. The record certainly supports inferences that he has continued his deception during the proceedings before the State Bar and before this court.

The local administrative committee recommended the penalty of disbarment, believing that his conduct and his reaction in the discovery of his untruthfulness, reflect a defect in his moral character which does not commend him to the continued practice of the law. The State Bar Disciplinary Board has recommended a less severe but substantial punishment. We believe that it is still possible for petitioner to redeem himself if permitted to practice and that the recommendation of the board should be adopted.

It is therefore ordered that Jerome Reznik be suspended from the practice of law in the State of California for three years; that execution of

our order be stayed and that he be placed on probation for said three years upon condition that he be actually suspended for the first year, and that he comply with the conditions of probation prescribed in the transcript of proceedings filed herein by the Disciplinary Board of the State Bar of California. The probation period shall commence 30 days after the filing of this order.