[S.F. No. 23169. In Bank. Feb. 6, 1975.]

In re MICHAEL HANLEY on Disbarment.

**COUNSEL**

Thomas H. Rothwell for Petitioner.

Herbert M. Rosenthal for Respondent.

**OPINION**

**THE COURT.**—Petitioner Michael Hanley, a member of the State Bar, seeks review of the recommendation of the State Bar Disciplinary Board (Board) that he be disbarred.

Petitioner was convicted in 1972 upon his plea of guilty to a charge of bribing a witness not to testify. (Pen. Code, § 136½.) We ordered him placed under interim suspension on October 25, 1972, noting that his crime was one involving moral turpitude, and referred the matter to the State Bar for hearings and recommendation on the issue of discipline. (Bus. & Prof. Code, §§ 6101, 6102.) After holding evidentiary hearings a local administrative committee unanimously recommended that petitioner be disbarred. The Board also recommended by a vote of ten to four that petitioner be disbarred.

Petitioner graduated from law school in 1968, at the age of 26, and was admitted to practice law in this state in June 1969. After working for a year as a tax auditor for the Internal Revenue Service he entered into private practice in mid-1970 as a sole practitioner.

In 1972 petitioner was retained by William Ledbetter to defend him against a charge of first degree murder arising out of a pool hall shooting. After discovering that the prosecution intended to call Boris Metlicovec as a witness at the preliminary hearing, petitioner invited Metlicovec to his office. At their first meeting Metlicovec told petitioner that he did not want to testify against Ledbetter for fear of reprisals from Ledbetter's friends. Petitioner stated that he had received $1,000 from Ledbetter and was willing to give Metlicovec $500 if he would not appear in court to testify, $200 to be paid in advance and the other $300 after the hearing. Petitioner admitted to the committee that it was his "intention to bribe [Metlicovec] at that point." The proposal was not then accepted and further meetings were arranged. Prior to the preliminary hearing petitioner met with Metlicovec a total of four or five times and the two discussed the "moral justification" for a refusal to testify. Petitioner explained to Metlicovec that the shooting had been provoked by an earlier incident which Metlicovec had not witnessed and that consequently the homicide should not have been charged as murder. At the second or third such meeting petitioner paid Metlicovec $200 but withheld the remaining $300 of the proposed payment pending developments at the preliminary hearing.

Metlicovec nevertheless appeared at the preliminary hearing and testified against Ledbetter who was held to answer on the murder charge. Metlicovec also informed police officers of the bribe and agreed to aid them in gathering further evidence. He subsequently met with petitioner to discuss the disposition of the $200 which Metlicovec had already received. Petitioner suggested that Metlicovec keep the money and

"vary" his trial testimony so as to "help Ledbetter" without, however, getting himself into trouble.[1]

Petitioner was subsequently arrested. In addition to being charged with the offense of bribing a witness not to testify he was also charged with the crime of bribing a witness to give false testimony. (Pen. Code, § 137.) He pleaded guilty to the charge of bribing a witness not to testify and the remaining charge was dropped. Although a probation report recommended against a prison sentence, the court rejected this recommendation. When arraigned for sentencing petitioner moved to withdraw his guilty plea on the ground that he had understood that a plea bargain had been made which provided that no prison term would be imposed. The court denied that any such bargain had been made, denied the motion and sentenced petitioner to prison for the term prescribed by law. Petitioner was paroled after serving approximately one year in prison. Since his release from prison following our interim suspension petitioner has been employed as a legal research assistant.

Petitioner's guilt of the crime charged has been conclusively determined (Bus. & Prof. Code, § 6101) and the fact that his offense involved moral turpitude has been heretofore determined by our order of interim suspension. Petitioner concedes as much and challenges only the Board's recommendation that he be disbarred as too severe a discipline under the circumstances.

"Although we have the final word as to the discipline to be imposed [citation], the recommendation of the Board is given great weight [citation]. Petitioner has the burden of showing that the Board's recommendation is erroneous or unlawful [citations]." (*Yokozeki* v. *State Bar* (1974) 11 Cal.3d 436, 450 [113 Cal.Rptr. 602, 521 P.2d 858].) Bribery of a witness not to testify in a murder case is an extremely serious offense. "It is far more reprehensible within the profession than when committed by one who is not a lawyer." (*In re Allen* (1959) 52 Cal.2d 762, 768 [344 P.2d 609] [procuring perjured testimony].) In such cases "disbarments and not suspensions have been the rule rather than the exception." (*In re Smith* (1967) 67 Cal.2d 460, 462 [62 Cal.Rptr. 615, 432 P.2d 231].)

Petitioner points out that in determining the proper discipline we should take into account not only the gravity of the offense but also the

[1]Ledbetter was represented by someone other than petitioner at his murder trial. Metlicovec testified for the prosecution and Ledbetter was convicted of voluntary manslaughter.

"circumstances of the case." (Bus. & Prof. Code, § 6102, subd. (b).) He cites two cases involving crimes similar to his own in which we considered extenuating circumstances in ordering suspension for a period of years contrary to the Board's recommendation of disbarment. In the first such case an attorney had been convicted in federal court of attempting to bribe an Internal Revenue Service auditor to settle a tax claim in a manner favorable to his client. Although the attorney claimed that his action was only a "foolish, negligent act," the Board found it to have been deliberate and calculated and recommended disbarment. Nevertheless we rejected their recommendation and ordered instead that an interim suspension, which had been in effect for about three years, be continued for a total of four years. (*In re Todisco* (1963) Bar Misc. 2666.)

The second case involves conduct similar to petitioner's. The attorney had been convicted of subornation of perjury and offering false evidence which, as in the instant case, constituted crimes against the judicial process itself. The Board had recommended disbarment. Nevertheless, while we noted that disbarment would normally be appropriate in such a case, we ordered a period of suspension instead. We based our judgment on a number of extenuating circumstances, including the attorney's prior lack of any disciplinary record, his advanced age (66), ill health and financial problems, his difficulty in obtaining employment due to his age and criminal record, the favorable testimony of character witnesses as to his integrity in handling large sums of money in the past, his service of time in prison for his crimes, and the fact that his suspension had already been in effect for five years. (*In re Jones* (1971) 5 Cal.3d 390 [96 Cal.Rptr. 448, 487 P.2d 1016].)

The foregoing cases, are, of course, exceptions to the general rule; but they demonstrate that the rule is not uniform and that each case, including the case now before us, must turn on its own facts. (*Yapp* v. *State Bar* (1965) 62 Cal.2d 809, 819 [44 Cal.Rptr. 593, 402 P.2d 361]; *In re Jones, supra,* 5 Cal.3d 390, 400.)

■ Petitioner urges as an extenuating circumstance his lack of experience. He was just over 30 years of age when the bribery occurred, he had been a member of the bar less than three years and in private practice less than two years. Although he had worked on a number of criminal cases in association with other attorneys, he had previously tried but one murder case alone.

Petitioner further points to his prior good record as a mitigating factor. (See *In re Jones, supra,* 5 Cal.3d 390, 400-401; *Yapp* v. *State Bar, supra,*

62 Cal.2d 809, 819.) Petitioner had had one minor disciplinary episode. That arose in 1970, shortly before he left the Internal Revenue Service. After having to post what he deemed to be excessive bail for a charge of littering from an automobile, petitioner wrote what he later described as "a nasty letter" to the judge. The judge wrote a letter of complaint to petitioner's employer and forwarded a copy of his letter to the State Bar. Petitioner appeared before a local committee of the State Bar and was required to write a letter of apology to the judge.

Petitioner also relies upon evidence of his good character as related by the 15 attorneys who testified or wrote letters in his behalf. Among these attorneys were several of his classmates, attorneys with whom he had worked before the *Ledbetter* case, his supervisor at the Internal Revenue Service, his father and his cousin. All of these attorneys were of the opinion that petitioner was a person of integrity and that his misdeed was out of character, attributable to a moral lapse or an immature impulse, and not likely to be repeated. His present employer, who hired him with knowledge of his criminal record, also wrote a letter attesting to petitioner's honesty and rehabilitation. The judge who sentenced petitioner wrote that the "seriousness of his offense had been sufficiently impressed upon" him. Additionally, two correctional officials who had contact with petitioner during his confinement testified to his successful adjustment and gain in maturity while in prison.

Petitioner has served a year in state prison for his crime. He asserts that this imprisonment and his consequent introspection have helped to rehabilitate him. As evidence of this rehabilitation petitioner points to his admission of wrongdoing, his acknowledgment that his actions were not justified and his cooperation with the committee. The committee in fact found that petitioner had been candid in his testimony. (*Bradpiece* v. *State Bar* (1974) 10 Cal.3d 742, 748 [111 Cal.Rptr. 905, 518 P.2d 337].)

The foregoing matters argued in mitigation are not persuasive. The nature of petitioner's wrongful conduct was not such that it was brought about because of his youth or inexperience as an attorney. He was not, for example, subjected to outside pressures, intimidations or compulsions with which only a more mature and experienced attorney could cope. (Cf. *Bryant* v. *State Bar* (1942) 21 Cal.2d 285, 297-299 [131 P.2d 523].) The bribe was formulated and urged by petitioner; his motivation was purely self-centered. Moreover, petitioner admitted that he realized at the time of the bribe that his conduct was wrongful. Thus, the fact that he was but 30 years of age and had practiced law for less than 3 years is no greater a mitigating factor than it would be in the case of a bribe

made by an attorney of 10 or 20 years' experience. (See *Reznik* v. *State Bar* (1969) 1 Cal.3d 198, 205 [81 Cal.Rptr. 769, 460 P.2d 969, 40 A.L.R.3d 161]; *Hall* v. *State Bar* (1938) 12 Cal.2d 462, 464-465 [85 P.2d 870].)

Similarly, petitioner's claim of a clean record is entitled to little weight in view of the short period of time that he has practiced law. Even though his prior transgression was of little significance, his conduct has been twice brought into question within a three-year period. (Cf. *In re Jones, supra,* 5 Cal.3d 390, 400-401 [66-year-old practitioner with no prior disciplinary record].)

Little weight in mitigation can be assigned to the fact that nobody was ultimately harmed by petitioner's actions. Although the lack of a victim's actual injury may be relevant in cases involving misappropriation of funds (e.g., *Yokozeki* v. *State Bar, supra,* 11 Cal.3d 436, 450), petitioner's crime was not directed against a particular victim but instead impugned the integrity of the judicial system. Moreover, unlike cases in which an attorney can make restitution to his victims and thereby alleviate some of the harm done, the lack of permanent injury resulting from petitioner's crime was not due to his own efforts but was instead brought about when Metlicovec refused to act in compliance with the bribe. (See *In re Allen, supra,* 52 Cal.2d 762 [attempted bribery of witnesses who were in fact government investigators].)

Although favorable character evidence from attorneys and state officials is generally entitled to considerable weight on the issue of a petitioner's moral fitness, it is not conclusive (*In re Wright* (1973) 10 Cal.3d 374, 382 [110 Cal.Rptr. 348, 515 P.2d 292]), especially where there is little proof of petitioner's rehabilitation. (*Feinstein* v. *State Bar* (1952) 39 Cal.2d 541, 547 [248 P.2d 3].) Very few of the character witnesses provided direct evidence as to his rehabilitation. Most of his former classmates and colleagues had not associated with him since his conviction and incarceration. As their opinions of his character were formed before the bribe they are of little value in helping us determine whether petitioner has rectified whatever moral flaw led to his misdeed. (Cf. *Toll* v. *State Bar* (1974) 12 Cal.3d 824 [117 Cal.Rptr. 427, 528 P.2d 35]; *In re Cohen* (1974) 11 Cal.3d 935, 940 [114 Cal.Rptr. 611, 523 P.2d 651] [testimony of two lawyers for whom petitioner had done extensive legal work after his conviction on nine counts of grand theft and who were aware of his criminal record].) Moreover, those few witnesses who had recent contact with petitioner do not provide specific examples of his conduct from which we can independently evaluate his fitness to practice law. (Cf. *March* v. *Committee of Bar Examiners* (1967) 67 Cal.2d 718,

721-722 [63 Cal.Rptr. 399, 433 P.2d 191] [letters from attorneys specifically directed at applicant's rehabilitation from prior misdeeds].) The character witnesses thus provide very little substantive evidence that petitioner has gained sufficient maturity and judgment to render himself fit to practice law. We agree with the finding by the committee that "While the prison officials believe [petitioner] ready for release from prison, and [petitioner's] father and [cousin] believe him rehabilitated, no witness demonstrated a basis for judging whether [petitioner] was able to assume the obligations of a practicing attorney."

■ Petitioner's criminal punishment is relevant to the issue of what discipline should be imposed. (*In re Jones, supra,* 5 Cal.3d 390, 401.) However, the two proceedings, criminal and disciplinary, have different purposes, the latter's being the protection of the public, the courts and the legal profession. (*In re Smith, supra,* 67 Cal.2d 460, 462.) The committee considered petitioner's incarceration as well as his assurances of rehabilitation and his candor and cooperation[2] and concluded nevertheless that "[w]hile there is some evidence tending to show that [petitioner] will probably not repeat his criminal acts, the Committee believes that [petitioner's] ability to properly resume his duties can be better determined after [he] has . . . resumed living under more normal circumstances for a substantial period of time. There is not sufficient evidence to support a finding that [petitioner] should be allowed to resume his role as a practicing attorney."

■ It appears from the foregoing that the most persuasive evidence of petitioner's rehabilitation as a reason for imposing a period of suspension in lieu of disbarment is his own belief that he has learned his lesson and will not repeat his misdeeds. On a prior occasion in a closely analogous situation we held that a greater showing was necessary. "[T]he burden properly must rest on [petitioner] to prove by sustained conduct over a period of years that not only his *belief* as to proper conduct for the future but his character, as well, has been established. His offenses, in our view, are of a nature which inherently call for disbarment. If and when petitioner can reasonably prove by showing a sustained course of conduct that he has attained a standard of character which entitles him properly to be accepted as a member of The State Bar of California, the law and the Rules of Procedure permit an application for reinstatement, upon good cause being shown and in the discretion of the Board of

[2]Petitioner was not always so candid in admitting his wrongdoing. After his arrest, he gave false accounts of the case to both the police and the newspapers and, as earlier noted, sought to change his plea from guilty to not guilty at the time for sentencing.

Governors, after a lapse of two years from disbarment." (*In re Allen, supra,* 52 Cal.2d 762, 768; italics in original.)[3]

Petitioner was released on parole only one year ago. He has not yet been able to demonstrate sustained conduct for any substantial period. Because of the seriousness of the crime, its reflection on the legal profession, and the lack of persuasive evidence that rehabilitation has in fact occurred, disbarment is the proper discipline.

It is therefore ordered that petitioner, Michael Hanley, be disbarred from the practice of law in this state, and that his name be stricken from the roll of attorneys, effective 30 days after the filing of this opinion.

---

[3]In *Allen* a young and inexperienced attorney had to overcome numerous obstacles to enter the legal profession. He was convicted of soliciting perjured testimony in a personal injury case and was given only a suspended sentence. A local minister testified to the petitioner's good character; a business associate testified that the petitioner had frequently turned down chances to make a "fast buck"; and the petitioner himself testified persuasively that he realized he had done wrong. Nevertheless we ordered him disbarred, noting that his crime was one which makes him unworthy of the office of attorney.

Because we felt that Allen's background entitled him to some leniency, we ordered his disbarment to be effective as of the date of his interim suspension so as to advance the date of his eligibility for reinstatement (see *Allen* v. *State Bar* (1962) 58 Cal.2d 912 [26 Cal.Rptr. 771, 376 P.2d 835]). The same result obtains in petitioner's case by virtue of an amendment to the Rules of Procedure of the State Bar (rule 54; West's Ann. Bus. & Prof. Code, foll. § 6087 [Deering's Rules of Procedure, rule 54]).