[L.A. No. 30679. Oct. 28, 1977.]

RONALD L. GOLDMAN et al., Petitioners, v.
THE STATE BAR OF CALIFORNIA, Respondent.

**COUNSEL**

Monta W. Shirley for Petitioners.

Herbert M. Rosenthal and Scott J. Drexel for Respondent.

**OPINION**

**THE COURT.**\*—The Disciplinary Board of the State Bar has recommended that petitioners, Ronald L. Goldman and Samuel P. Delug, be

---

\*Before Bird, C. J., Tobriner, J., Mosk, J., Clark, J., Richardson, J., Manuel, J., and Jefferson, J.†

---

†Assigned by the Chairperson of the Judicial Council.

suspended from the practice of law for one year for conduct involving the solicitation of professional employment. This court concurs in the board's recommendation.

I

On April 30, 1973, a notice to show cause was served on petitioners, charging each with violating his oath and duties as an attorney (Bus. & Prof. Code, §§ 6103, 6067, 6068), willfully violating rules 2, 3, and 11 of the Rules of Professional Conduct in effect prior to January 1, 1975 (3B West's Ann. Bus. & Prof. Code (1974 ed.) foll. § 6076),[1] and committing acts involving moral turpitude and dishonesty (Bus. & Prof. Code, § 6106).[2]

Ten counts of unprofessional conduct were alleged. Of these ten, six counts charging specific instances of solicitation were found to be true by the local administrative committee and the disciplinary board; three counts were dismissed. In a final count based upon the previous counts, it was charged and found to be true that petitioners had pursued a course of conduct designed to solicit professional employment from victims of automobile accidents occurring in Kern County, had willfully accepted employment knowing that it was obtained by "cappers,"[3] and had willfully and knowingly aided, abetted, and advised Leroy Jones, Leroy Willis, and others to violate the laws of California.[4]

---

[1] Rule 2 provided in pertinent part: "A member of the State Bar shall not solicit professional employment by . . .
"(1) Volunteering counsel or advice . . . ."
Rule 3 provided in pertinent part: "A member of the State Bar shall not employ another to solicit or obtain, or remunerate another for soliciting or obtaining, professional employment for him; nor, except with a person licensed to practice law, shall he directly or indirectly share compensation arising out of or incidental to professional employment; nor shall he directly or indirectly aid or abet any person not so licensed . . . to practice law or to receive compensation therefrom. A member of the State Bar shall not knowingly accept professional employment offered to him as a result of or as an incident to the activities of any person not so licensed . . . ."
Rule 11 provided in pertinent part: "A member of the State Bar shall not advise the violation of any law."

[2] Unless otherwise specified, all statutory references herein are to the Business and Professions Code.

[3] Section 6151 provides in pertinent part: "A runner or capper is any person . . . acting in any manner or in any capacity as an agent for an attorney at law . . . in the solicitation or procurement of business for such attorney . . . ."

[4] Section 6152 provided in pertinent part: "It is unlawful for any person . . . to act as a runner or capper for . . . attorneys or to solicit any business for any such attorneys in . . . any public place . . . or upon private property of any character whatsoever." As of January 1, 1977, this section was recodified as section 6152, subdivision (a)(1).

## II

Petitioners have been members of the State Bar for approximately 10 years and have no prior disciplinary record. In 1969 they became partners in a Beverly Hills law practice and in the fall of 1971 opened a branch office in Bakersfield. The misconduct in question occurred in connection with their Bakersfield practice. Leroy Willis, an investigator for petitioners, established that office, and one of the petitioners spent each Thursday in the office on an alternating basis. The office was ordered closed by petitioners in December 1971, after it came to their attention that the State Bar was conducting an investigation of solicitations allegedly being made in their behalf.

About the time Willis established the Bakersfield office, he arranged with Luther Wafford and Leroy Jones, both of whom were employed at the Kern County General Hospital in Bakersfield, to work as part-time investigators for petitioners' law firm. Willis testified at a hearing before the local administrative committee that his duties were to do investigative work for the firm and that he hired Wafford and Jones without petitioners' knowledge. Petitioners left instructions for Willis in the Bakersfield office, where he spent three to five days a week, and his work was regularly reviewed by them during their visits to Bakersfield. Copies of the Bakersfield files were kept in the Beverly Hills office. Willis stated that he did not knowingly solicit clients for petitioners, that he did not authorize anyone else to do so, and that he was not aware that Wafford and Jones had done so.

Wafford testified generally that he performed investigative services for Willis and petitioners and that he had not been directed by Willis to solicit clients for the firm. However, in identifying a written statement prepared and submitted to him by a State Bar investigator, Wafford testified that he had reviewed and signed the statement and that the contents were true and correct to the best of his belief.[5] The gist of the

---

[5]The following portions of the statement were read into the record:

"After hiring us Leroy Willis told Leroy Jones and me that all we had to do was to go out and talk to people that had been in an accident. He said we were to ask these people whether they had an attorney and if not whether they wanted to retain an attorney. We were also to secure from these people the facts of the accident in which they had been involved. Willis gave us Retainer Forms to secure the signatures thereon of any person we interviewed who would agree to hire Goldman and Delug to represent them and handle the case pertaining to the accident in which they had been involved.

". . . . . . . . . . . . . . . . . . .

"While employed by Goldman and Delug under the supervision of Leroy Willis I

statement was that Wafford and Jones were directed by Willis to approach persons who had been the victims of accidents and solicit them as clients for petitioners' firm.

Jones testified that Wafford offered him part-time work investigating accidents for petitioners in August 1971. His duties were to learn about accidents, "find out how badly [the parties] were injured or who was involved with them. . .who was at fault and try to represent them—offer to represent them. . . . If they didn't have . . . any attorney, per se, I would ask them if they would like for our attorneys to represent them. Sometimes the answer was no and sometimes it would be yes. Then that's when we would write a retainer on them . . . ." He further testified that he began working for petitioners before their Bakersfield office was opened, and that he delivered signed retainers to Wafford. After the office opened, he delivered them to the office secretary.

Declarations of persons who allegedly had been solicited were admitted in evidence by the local administrative committee. These declarations supplied facts pertinent to the six specific instances of solicitation which were found to be true by the committee and the disciplinary board.[6]

worked with Leroy Jones and I would say Jones and I talked to ten or fifteen accident victims in this period of time.

"Leroy Jones interviewed more clients than I did. Leroy Jones was much more articulate than I am and even when we worked together Leroy Jones would usually do most of the talking. In our conversations with accident victims Leroy Jones and I would ask the people with whom we talked to retain Goldman and Delug as their attorney."

[6] Based on the declarations and testimony, these six specific instances of solicitation may be summarized as follows:

1) *Count 1*: Jones called at the home of persons injured in an automobile accident, obtained their signatures on retainer agreements, and left petitioner Delug's business card. Subsequently three letters on petitioners' stationery were directed to one of these persons. The first two letters sought office appointments and the third terminated the representation. The secretary for the Bakersfield office testified that at petitioners' direction, she signed Goldman's name to one of the letters and Delug's to another.

2) *Count 2*: Jones called at the home of the mother of a minor who was involved in an automobile accident. He stated that he represented petitioners and obtained the mother's signature on a retainer agreement. Willis, who later talked to the mother, testified that he worked on the case on instructions from petitioners. Representation was terminated by a letter from petitioners' Beverly Hills office bearing the signature "Samuel Delug." Delug, however, testified that he neither signed nor authorized the letter.

3) *Count 3*: The work supervisor of an automobile accident victim responded to a

Petitioners testified, denying any knowledge that solicitations had been conducted in their behalf.

## III

Petitioners urge the following contentions: (1) the declarations admitted as evidence contain inadmissible hearsay; (2) the findings that petitioners authorized solicitations are unsupported by the evidence; (3) the final count of the notice to show cause constitutes double punishment, as prohibited by Penal Code section 654; (4) petitioners were compelled to testify against themselves and to produce records in violation of their federal and state constitutional rights; and (5) the discipline recommended by the board is too severe.

■ Petitioners' counsel and the State Bar examiner stipulated that "declarations [of persons allegedly solicited] may be received on the same basis that they would be received had the witness been present in court and had testified on the matters set forth therein subject to any objections to the [contents] thereof." Petitioners objected that the declarations contained inadmissible hearsay, and now assert that their objections were improperly overruled. However, in light of the stipulation, the material was properly admitted since it was introduced to prove the acts of solicitation by Jones and Willis. It was not offered to prove the truth of the matters stated, that is, petitioners' knowledge or authorization of the solicitations. Thus, it was not hearsay. (*Younger* v. *State Bar* (1974) 12 Cal.3d 274, 286 [113 Cal.Rptr. 829, 522 P.2d 5].)

---

telephone call purporting to be from petitioners' office. When the supervisor returned the call, a man answering at petitioners' office stated that the attorneys he worked for would like to represent the accident victim.

4) *Count 4*: Both Willis and Jones offered to pay the friend of a deceased accident victim if he would arrange for petitioners to represent the victim's parents. Additionally, a man claiming to represent petitioner Goldman attempted to convince the victim's brother and sister-in-law that petitioners should be employed, and left petitioners' business card.

5) *Count 7*: The parents of a deceased automobile accident victim were twice contacted by a man who solicited their employment of petitioners' firm. Such solicitation was corroborated by Jones' testimony that he and Wafford called on the parents and "offered to have them represented" by petitioners' firm.

6) *Count 8*: The mother of a girl injured in an automobile accident was contacted on several occasions by Jones, who recommended that she employ petitioners' law firm to represent her daughter. The mother also received an unsigned letter over the typewritten name of Delug asking that she come to the office for an interview. Jones testified that he made such a solicitation and that he had the mother sign "the usual retainer."

Petitioners next contend that the evidence connecting them with the activities of Willis, Wafford, and Jones is insufficient to support the findings of fact that petitioners had authorized solicitations of professional employment through the use of "cappers." In support of their contention, petitioners rely upon *Werner v. State Bar* (1939) 13 Cal.2d 666 [91 P.2d 881]. In *Werner,* however, there was no persuasive evidence that the person who solicited for the attorney did so with the latter's knowledge or consent, or was even employed by the attorney. In petitioners' case, there is compelling evidence that Willis, Wafford, and Jones were employed by petitioners and acted with petitioners' knowledge and approval. Jones testified that when he apologized for not having "more clients" to "turn in," Delug told him to "[k]eep doing what I had been doing." Jones also stated that although Delug was aware that Jones was "signing these people up" to retainer agreements, Delug never cautioned him against it.

In view of the evidence of the close contact petitioners maintained with their Bakersfield office, their contention that they lacked knowledge of solicitations by their employees is not credible. One of petitioners was in the Bakersfield office each Thursday to see people with appointments and to review work done on the files. Petitioners communicated with the secretary and Willis several times a week, and left weekly written instructions for Willis in the Bakersfield office. The secretary sent letters only when specifically instructed to do so by petitioners. She was authorized to sign petitioners' names to letters only after they knew the letters' text. Duplicates of all new Bakersfield files and of additions to their contents were routinely sent or delivered by Willis to the Beverly Hills office. Additionally, Goldman testified that when he interviewed clients, he asked them how they had selected petitioners as their attorneys.

At the hearing before the local administrative committee, petitioners denied knowledge that solicitations had been conducted in their behalf. However, petitioners' credibility as witnesses was squarely called into question by numerous inconsistent statements. For example, during questioning before the committee, Delug generally denied having heard of persons who allegedly had been solicited as clients. However, he had stated at an earlier deposition that a duplicate client file regarding the case of one of those persons had been sent to him in November 1971. Further, he had admitted in his answer to the notice to show cause that

his firm had represented persons involved in another of the alleged instances of solicitation. Petitioner Goldman testified that he had not heard of or represented persons involved in three of the alleged instances of solicitation, but in his answer to the notice to show cause, stated he believed his firm had a file on one of the three matters. In addition, his response to an interrogatory was that his firm represented the persons involved in the other two matters.

■ In this court's independent review of the evidence, the findings of the local administrative committee and the board are entitled to great weight, and "[w]hen the evidence at the local committee's hearing consisted primarily of conflicting testimony, the opportunity to observe the witnesses constrains [this court] to weigh heavily the testimony supporting the committee's findings. [Citations.]" (*Nizinski* v. *State Bar* (1975) 14 Cal.3d 587, 595-596 [121 Cal.Rptr. 824, 536 P.2d 72].)

It is well settled that in seeking review of a recommendation of the disciplinary board, a petitioner has "the burden of showing the findings are not supported by the evidence or are otherwise improper. [Citation.]" (*Nizinski* v. *State Bar, supra,* 14 Cal.3d 587, 595.) "In meeting this burden, [a] petitioner must demonstrate that the charges of unprofessional conduct are not sustained by convincing proof and to a reasonable certainty. [Citations.]" (*Himmel* v. *State Bar* (1971) 4 Cal.3d 786, 794 [94 Cal.Rptr. 825, 484 P.2d 993].) Petitioners in this case have not carried that burden. The direct and circumstantial evidence clearly establishes that petitioners engaged in the unprofessional conduct charged and found to be true.

■ Petitioners next assert that count 10 of the notice to show cause is a composite charge involving prior counts and constitutes double punishment for a single act or omission which is made punishable by different statutes, in violation of Penal Code section 654.[7] Their

---

[7]At the time the notice to show cause was filed, Penal Code section 654 read: "An act or omission which is made punishable in different ways by different provisions of this Code may be punished under either of such provisions, but in no case can it be punished under more than one; an acquittal or conviction and sentence under either one bars a prosecution for the same act or omission under any other. In the cases specified in sections six hundred and forty-eight, six hundred and sixty-seven, and six hundred and sixty-eight, the punishments therein prescribed must be substituted for those prescribed

contention is without merit. This court repeatedly has said that "[p]roceedings before the State Bar are *sui generis,* neither civil nor criminal in character, and [that] the ordinary criminal procedural safeguards do not apply. [Citations.]" (*Yokozeki* v. *State Bar* (1974) 11 Cal.3d 436, 447 [113 Cal.Rptr. 602, 521 P.2d 858].) Moreover, whether or not duplicative, the charges themselves do not constitute the imposition of discipline.

■ Next, petitioners argue that their rights under the federal and state Constitutions (U. S. Const., Amends. V and XIV; Cal. Const., art. I, former § 13, now § 15) were violated because they were compelled to testify against themselves and to produce records in this proceeding. This court rejected similar contentions in *Black* v. *State Bar* (1972) 7 Cal.3d 676 [103 Cal.Rptr. 288, 499 P.2d 968], on the ground that an attorney in a disciplinary proceeding does not have the same immunities as a defendant in a criminal proceeding. The reasoning in *Black* is equally applicable here.

Petitioners' final contention is that the board's recommendation of a one-year suspension is too severe, noting that the local administrative committee recommended two years' suspension, with execution stayed, and probation on conditions including only six months' actual suspension. Petitioners urge that their only culpability was inadequate supervision of their Bakersfield office due to their youth and inexperience as attorneys. ■ In determining the discipline to be imposed, the board's recommendation is to be accorded greater weight than the committee's. (*Toll* v. *State Bar* (1974) 12 Cal.3d 824, 831 [117 Cal.Rptr. 427, 528 P.2d 35].) The board was presented with convincing evidence to a reasonable certainty of petitioners' misconduct. In light of the evidence, this court concurs with the board's recommendation.

It is ordered that each petitioner be suspended from the practice of law for one year, and until he passes the Professional Responsibility Examination. (See *Segretti* v. *State Bar* (1976) 15 Cal.3d 878, 891, fn. 8 [126 Cal.Rptr. 793, 544 P.2d 929].) Further, each petitioner is ordered to comply with California Rules of Court, rule 955. Those acts specified in subdivisions (a) and (c) of that rule shall be performed within 30 and 40

for a first offense, if the previous conviction is charged in the indictment and found by the jury."

This section was modified in a manner not pertinent to petitioners' argument, effective July 1, 1977. (Stats. 1976, ch. 1139, § 264, p. 5137, No. 6 Deering's Adv. Legis. Service, p. 414.)

days, respectively, after the effective date of this order. ▇ ▇▇▇▇ This order is effective as to Goldman 30 days after the filing of this opinion and as to Delug on Nobember 16, 1977.[8]

---

[8]While petitioners' proceeding was pending before this court, the United States Supreme Court in *Bates* v. *State Bar* (1977) 433 U.S. 350 [53 L.Ed.2d 810, 97 S.Ct. 2691] held, on First Amendment grounds, that the State Bar of Arizona may not "prevent the publication in a newspaper of [its members'] truthful advertisement concerning the availability and terms of routine legal services." (*Id.,* at p. 384 [53 L.Ed.2d at p. 836].)

That opinion, however, does not hold that a proper state agency cannot prohibit solicitation of the kind involved in the petitioners' case. The court stated that "we, of course, do not hold that advertising by attorneys may not be regulated in any way" (*id.,* at p. 383 [53 L.Ed.2d at p. 835]), and that "there may be reasonable restrictions on the time, place, and manner of advertising." (*Id.,* at p. 384 [53 L.Ed.2d at p. 836].)

More significantly, the court noted that it did not undertake to "resolve the problems associated with in-person solicitation of clients—at the hospital room or the accident site, or in any other situation that breeds undue influence—by attorneys or their agents or 'runners.' Activity of that kind might well pose dangers of overreaching and misrepresentation not encountered in newspaper announcement advertising." (*Id.,* at p. 366 [53 L.Ed.2d at p. 825].) *Bates* affords no relief for petitioners' misconduct in this disciplinary proceeding. (Cf. *Jacoby* v. *State Bar* (1977) 19 Cal.3d 359 [138 Cal.Rptr. 77, 562 P.2d 1326].)