[L.A. No. 30894. Nov. 30, 1978.]

In re SANFORD S. ARNOFF on Suspension.

742

---

**COUNSEL**

Sanford S. Arnoff, in pro. per., and Michael J. Rochford for Petitioner.

Herbert M. Rosenthal and Darlene Marie Azevedo for Respondent.

## OPINION

**THE COURT.**—Proceeding to review recommendation of the Disciplinary Board of the State Bar that petitioner Sanford S. Arnoff be suspended from practice of law for a period of two years.

Petitioner entered a guilty plea on January 28, 1975, to charges of violating Penal Code section 182, subdivision 1 (conspiracy to commit capping in violation of Bus. & Prof. Code, § 6152).[1] After finality of judgment we referred the matter to the State Bar for hearing, report and recommendation as to whether the circumstances surrounding the commission of the offense "involved moral turpitude or other misconduct warranting discipline" and, if so found, the discipline to be imposed.

Petitioner was admitted to the practice of law in Ohio in 1951 and in California in 1962. He has no record of prior discipline in either Ohio or California.

Sometime in 1970 petitioner was introduced to a layman then associated with Attorney Gary Bock in representing persons asserting personal injury claims.[2] The volume of such business was substantial and the layman asked petitioner to associate with him and Bock. The layman thereafter in 1970 referred personal injury claims to petitioner and petitioner signed retainer agreements with clients following some of such referrals.

Petitioner and the layman entered an oral agreement sometime in 1971. The agreement provided that the layman would establish a suite of offices and provide necessary office staff for petitioner; that the layman and petitioner would share equally in petitioner's fees after deductions for office expenses, a $1,800 monthly draw for petitioner, and cost of petitioner's malpractice and automobile insurance. The agreement became operative late in 1971 and was terminated in August 1973. Approximately 500 personal injury claims were directed to petitioner's office during this period.

---

[1] People v. Arnoff (Super. Ct. of L.A. County, No. A-314969). An additional charge of violating Penal Code section 182, subdivision 4 (conspiracy to cheat and defraud) was dismissed on February 18, 1975, "in the interest of justice" pursuant to motion by the district attorney. Petitioner was fined $500 and placed on three years formal probation (subsequently reduced to one year formal and two years summary probation).

[2] On May 1, 1975, Bock's resignation as a member of the California State Bar was accepted by this court.

It was determined by a local administrative committee on substantial evidence that before the end of 1971 petitioner had become aware the layman employed cappers and that many of petitioner's clients had been first contacted by such persons. For at least one and possibly two years petitioner made no effort to halt these activities.

During the 1971-1973 period the layman paid "kickbacks" to doctors who had referred personal injury clients to petitioner through the layman. It is not clear whether petitioner ever knew about the kickbacks.

In attempting to settle certain claims, petitioner or his office personnel utilized medical reports prepared by Dr. Rudy Salomons. Salomons' reports were fraudulent in that they overstated the number of patient visits and the extent of medical treatment. It is not known exactly when petitioner realized Salomons' reports were fraudulent; however, it appears that petitioner's employees knew of their falsity and that petitioner probably discovered their fraudulent character in late 1972.

The layman was at all times in effective control of petitioner's office. The layman hired, trained and supervised petitioner's employees. Records relating to all of petitioner's office accounts were maintained by a bookkeeper accountable only to the layman, and the bookkeeper made cash disbursements without authorization from petitioner.

There is evidence petitioner was in physical fear of the layman during their association. The layman threatened petitioner in a variety of ways. He exhibited a gun to petitioner; he introduced petitioner to a person described to petitioner as a member of "the Mafia"; petitioner was made to understand that if he did not continue to cooperate he would suffer severe physical injury, and death threats were made to at least two of petitioner's employees.

During the 1971-1973 period, petitioner suffered from heavy emotional pressure caused by the breakup of his family. Petitioner's wife stated she no longer desired to live with him, and his son presented special problems which were disturbing to petitioner and to his wife. Petitioner separated from his wife in 1971 and dissolution appeared imminent. Petitioner, whose father's death had resulted from high blood pressure at petitioner's approximate age, also suffers from high blood pressure.

The local administrative committee found petitioner's misconduct to include the knowing use of cappers, fee splitting with a layman, and

abdication of control of his practice to a layman of questionable character. The committee declined to find petitioner knowingly used fraudulent medical reports to defraud insurance companies, although it found that such reports were used over a long period of time and that in at least one case (the Armstead case) there was a strong suspicion of petitioner's fraudulent knowledge.

The committee concluded without considering mitigating factors that the totality of conduct fell "close to moral turpitude," recommending petitioner be suspended from practice for a period of three months to be coterminous with a two-year probationary period.

The disciplinary board unanimously adopted the committee's findings as amended by the board. In amending it found that the Armstead case was settled at a time when petitioner "knew" Dr. Salomons' reports were false; that it was highly likely petitioner knew those reports were false at an earlier time than found by the committee; and that, contrary to a committee finding, petitioner was in fear of the layman for a "substantial period during their association." The board unanimously concluded the facts and circumstances surrounding petitioner's criminal violation involved moral turpitude.

Petitioner disputes the board's recommendation of two years actual suspension and contends the penalty should not exceed that recommended by the committee.

█ Petitioner contends the State Bar's investigations should have been limited to the capping conviction, claiming the inquiry into the use of Dr. Salomons' reports was improper. We have uniformly considered in reference proceedings all facts and circumstances surrounding the commission of a crime by an attorney. (*In re Langford* (1966) 64 Cal.2d 489 [50 Cal.Rptr. 661, 413 P.2d 437].) In *Langford,* petitioner contended a finding involving the importation of gold was irrelevant to the conviction of selling fraudulent securities. We stated: "We must agree with petitioner that standing alone these matters as found by the Board of Governors do not constitute grounds for disciplinary action. However, there is no impropriety in considering these matters as a part of the circumstances of the commission of the crime of which petitioner was convicted." Furthermore, ". . . an investigation of the gold transactions is justified under the direction of subdivision (b) of section 6102 of the Business and Professions Code which requires that we discipline an attorney if we find moral turpitude not only in the crime itself but also the

'circumstances of its commission.' " (*Id.,* at p. 496.) We conclude the board and committee's consideration of petitioner's use of fraudulent medical reports was properly within its scope of review.

■ Petitioner also contends his conduct is protected under the First Amendment to the United States Constitution. Solicitation by an attorney of professional employment is speech which is protected by the First Amendment. (*Jacoby* v. *State Bar* (1977) 19 Cal.3d 359 [138 Cal.Rptr. 77, 562 P.2d 1326].) However, the type of solicitation involved in this case (running and capping) is not the same as that protected in *Jacoby.* More recently in *Goldman* v. *State Bar* (1977) 20 Cal.3d 130 [141 Cal.Rptr. 447, 570 P.2d 463] we distinguished the use of advertisements concerning the availability and terms of routine legal services (see *Bates* v. *State Bar of Arizona* (1977) 433 U.S. 350 [53 L.Ed.2d 810, 97 S.Ct. 2691]) from the use of cappers and runners to solicit clients. (*Goldman* v. *State Bar, supra,* 20 Cal.3d 130, 141, fn. 8.) Petitioner's contentions are without merit and we adhere to our decision in *Goldman.* (See also *Ohralik* v. *Ohio State Bar Association* (1978) 436 U.S. 447 [56 L.Ed.2d 444, 98 S.Ct. 1912]; *In re Primus* (1978) 436 U.S. 412 [56 L.Ed.2d 423, 98 S.Ct. 1893].)

■ Petitioner asserts duress as a defense to the misconduct found by the State Bar. Duress depriving an accused of voluntariness in his conduct is a defense against a criminal charge. (Pen. Code, § 26.)[3] We have not heretofore considered the applicability of such defense in disciplinary proceedings and we do not now reject the proposition that discipline should not be imposed for commission of an act or acts beyond control of an attorney. However, we do not view petitioner's conduct as being so beyond his control that he can avoid responsibility on that ground. He does not ask to be excused for a particular act or acts performed against his will, and he cannot in good faith contend that each improper act during the whole course of his misconduct over a period of approximately two years was involuntarily entered into. There is no persuasive evidence he made serious effort to terminate his association with the layman or to bring his situation to the attention of any authority.

In concluding petitioner is responsible for his conduct we are influenced by the purposes to be served by attorney disciplinary proceedings. ■ The principal objective of such proceedings is to protect the

___

[3]Petitioner did not assert such defense in the criminal proceedings, having entered a guilty plea.

public and the judiciary from the official ministrations of persons unfit to practice law. (*Black* v. *State Bar* (1972) 7 Cal.3d 676, 688 [103 Cal.Rptr. 288, 499 P.2d 968].) An attorney who lends his license to the course of conduct engaged in by petitioner clearly presents a threat to the welfare of the public and the courts. He cannot avoid responsibility therefor on a record demonstrating such little serious effort to conform his conduct or to disassociate himself from the misconduct of others as disclosed by the instant record. While we thus reject petitioner's claims of duress as a defense, such claims may be considered in mitigation of the punishment to be imposed.

 In proceedings to review disciplinary recommendations of the State Bar, the burden is on petitioner to show the board's recommendation is erroneous. (See *Mack* v. *State Bar* (1970) 2 Cal.3d 440 [85 Cal.Rptr. 625, 467 P.2d 225]; *Reznik* v. *State Bar* (1969) 1 Cal.3d 198 [81 Cal.Rptr. 769, 460 P.2d 969, 40 A.L.R.3d 161].) While the recommendations of the board are to be given great weight, we have plenary power to make such order as we deem appropriate. Petitioner's conduct calls for discipline to protect both the profession and the public, but mitigating factors are urged in determining the extent of discipline.

Petitioner practiced law for almost 20 years prior to his association with the layman and had never been disciplined. (See *In re Jones* (1971) 5 Cal.3d 390, 401 [96 Cal.Rptr. 448, 487 P.2d 1016]; *Himmel* v. *State Bar* (1971) 4 Cal.3d 786, 799 [94 Cal.Rptr. 825, 484 P.2d 993]; *Yapp* v. *State Bar* (1965) 62 Cal.2d 809, 819 [44 Cal.Rptr. 593, 402 P.2d 361].) He has continued to practice law for five years since the misconduct involved herein, successfully representing his client's interests and obtaining their trust. Fellow attorneys have testified on petitioner's behalf expressing confidence such misconduct will not recur. (See *Bradpiece* v. *State Bar* (1974) 10 Cal.3d 742 [111 Cal.Rptr. 905, 518 P.2d 337].) Petitioner now practices in the area of entertainment law and he is involved in a few personal injury cases.

 Domestic and health difficulties may be considered in mitigation of discipline for misconduct. (See *Benson* v. *State Bar* (1971) 5 Cal.3d 382, 388 [96 Cal.Rptr. 30, 486 P.2d 1230]; *In re Cohen* (1974) 11 Cal.3d 935 [114 Cal.Rptr. 611, 523 P.2d 653]; *Bradpiece* v. *State Bar, supra,* 10 Cal.3d 742, 747.) In 1971 petitioner was deeply involved in domestic and family problems.

Petitioner has been candid and cooperative with the authorities. Several witnesses have testified to his remorse, and he has sought

professional service to aid his rehabilitation. There is psychiatric testimony that petitioner is no longer susceptible to the kinds of influence imposed by the layman. (See *Bradpiece* v. *State Bar, supra,* 10 Cal.3d 742, 748.)

 While the mitigating factors, including the threats of physical violence, are relevant to the issue of discipline, the record demonstrates petitioner committed acts involving moral turpitude and violated his oath, his duties as an attorney, and rules of professional conduct. He split his fees with a layman,[4] participated in a scheme using cappers and runners, and made extensive use of fraudulent medical reports under circumstances inferring at least grossly negligent conduct.

The discipline recommended by the board—suspension from practice of law for two years and compliance with rule 955—is appropriate.

It is therefore ordered that Sanford S. Arnoff be suspended from the practice of law for two years and, if he has not passed the Professional Responsibility Examination within that time, for such additional time until he passes that examination. (See *Segretti* v. *State Bar* (1976) 15 Cal.3d 878, 891, fn. 8 [126 Cal.Rptr. 793, 544 P.2d 929].) It is further ordered that he comply with rule 955 of the California Rules of Court and that he perform the acts specified in subdivisions (a) and (c) of that rule within 30 and 40 days respectively after the effective date of this order. This order is effective 30 days after the filing of the opinion.

Petitioner's application for a rehearing was denied January 24, 1979, and the opinion was modified to read as printed above.

---

[4] "'Prohibited fee splitting between lawyer and layman . . . poses the possibility of control by the lay person, interested in his own profit, rather than the client's fate . . . .' [Citation.]" (*Gassman* v. *State Bar* (1976) 18 Cal.3d 125, 132 [132 Cal.Rptr. 675, 553 P.2d 1147].)