## BOARD OF OVERSEERS OF THE BAR

v.

### James H. DINEEN.

Supreme Judicial Court of Maine.

Argued June 22, 1984.

Decided Sept. 5, 1984.

J. Scott Davis, Board of Overseers of the Bar (orally), Augusta, for plaintiff.

J. Armand Gendron (orally), Sanford, for defendant.

Before NICHOLS, ROBERTS, WATHEN and SCOLNIK, JJ., and DUFRESNE, A.R.J.

SCOLNIK, Justice.

Pursuant to M. Bar R. 7(e)(6)(D),[1] James H. Dineen appeals from a judgment of disbarment entered by a single justice of the Maine Supreme Judicial Court. He challenges the sufficiency of the evidence against him and contends that the procedure used by the presiding justice denied him due process of law. We affirm the judgment.

On October 20 and 21, 1980, Dineen, a member of the Maine Bar, represented Phillip Toussaint in a jury trial in the Superior Court (York County), on a charge of armed robbery. Toussaint was charged with having robbed the Brunswick Hotel in Old Orchard Beach at 7:00 a.m. on July 25, 1980. At trial, Toussaint testified under direct examination by Dineen that he was home when the robbery took place. He nevertheless was convicted and sentenced to seven years in the Maine State Prison. Toussaint subsequently filed a petition for post-conviction relief, claiming ineffective assistance of counsel. At the hearing on the petition, Toussaint charged that Dineen had failed to present certain alibi witnesses who would have testified on Toussaint's behalf. Appearing as a witness, Dineen stated that he knew in advance that Toussaint would testify that he was home at the time of the robbery, but that he had not known of any alibi witnesses.

There followed a series of questions by the State's attorney aimed at eliciting whether Toussaint, at any time prior to trial, had made statements to Dineen inconsistent with his alibi. Dineen objected on the basis of relevance and attorney-client privilege. The court instructed Dineen to answer, noting that the state of his knowledge at the time of trial was relevant on the issue of his failure to call alibi witnesses, and that Toussaint had waived his attorney-client privilege by bringing the instant petition. The following colloquy then occurred:

Q. Would you answer the question, please, sir?

A. Yes, he was out of the house, he told me.

Q. Where did he tell you he was?

A. Old Orchard Beach.

Q. Doing what?

A. Robbing the hotel.

Subsequently, the Grievance Commission of the Board of Overseers of the Bar held a disciplinary hearing and concluded there was probable cause to file an information with the Supreme Judicial Court. An information was then filed charging Dineen with the violation of M. Bar R. 3.2(f)(3) and 3.7(b).[2] A full evidentiary hearing was held at which Dineen testified that it was only after Toussaint's conviction that Toussaint admitted to him that he had committed the robbery. The court, however, in its order, rejected this explanation, stating that "[i]t was impossible for [Dineen] at the post-conviction hearing to have failed to understand the State's often repeated question and its obvious purpose. There is no reason to accept Mr. Dineen's present attempt under oath to impeach his own deliberate testimony given under oath at the post-conviction hearing." Finding as a fact that Dineen had known ahead of time that Toussaint would falsely testify at the trial, and calling this "the clearest kind of ethical

1. M. Bar R. 7(e)(6)(D) states: "The judgment entered in an attorney discipline action may impose an admonition, a reprimand, public censure, suspension or disbarment, or may dismiss the information. Either party may appeal to the Law Court within 10 days from the entry of the judgment of the single justice."

2. M. Bar R. 3.2(f)(3) states that "[a] lawyer shall not ... engage in conduct involving dishonesty, fraud, deceit, or misrepresentation ...." Rule 3.7(b) provides that "[a] lawyer shall not knowingly make a false statement, conceal information legally required to be revealed, or participate in the creation or preservation of false evidence."

breach," the court ordered that Dineen be disbarred.[3]

### I.

We turn first to the sufficiency of the evidence issue. Dineen asserts that the only basis for the court's ruling was his inculpatory remarks made during the post-conviction hearing. He therefore concludes that the single justice made his determination solely on the basis of a written transcript, and urges that the Law Court need not defer to the factual findings of the single justice but, instead, may review the written evidence and make an independent determination.[4] We disagree that the factual findings in this case were based solely on the transcript of the post-conviction proceeding. In his order, the single justice made clear that he had taken into account the credibility of Dineen's testimony at the disciplinary proceeding, and weighed that against the inculpatory evidence contained in the post-conviction transcript.

Moreover, we reject the notion that we may disregard the factual findings of the single justice and provide, in effect, a trial *de novo* on appeal. Our function is to review the inferences drawn by the single justice from the evidence before him, and to uphold his findings of fact unless they are clearly erroneous. Using this test,

> the trial judge's findings stand unless they clearly cannot be correct because there is *no* competent evidence to support them. An appellate court can reverse a finding of fact only where (1) there is no competent evidence in the record to support it, or (2) it is based upon a clear misapprehension by the trial court of the meaning of the evidence, or (3) the force and effect of the evidence,

taken as a total entity, rationally persuades to a certainty that the finding is so against the great preponderance of the believable evidence that it does not represent the truth and right of the case.

*Harmon v. Emerson,* 425 A.2d 978, 982 (Me.1981) (citing *Western Cottonoil Co. v. Hodges,* 218 F.2d 158 (5th Cir.1955)) (emphasis in original). After carefully reviewing the evidence, we conclude that the inferences drawn by the presiding justice are adequately supported by competent evidence in the record. The evidence that Dineen knew in advance that his client would falsely testify is compelling. He could have stated, at any time during his testimony at the post-conviction proceeding, that he learned of Toussaint's involvement in the robbery after, rather than before, the trial. The credibility of his exculpatory testimony during the disciplinary proceeding was for the presiding justice to weigh, *see Luce Co. v. Hoefler,* 464 A.2d 213, 215–16 (Me.1983); *Qualey v. Fulton,* 422 A.2d 773, 776 (Me.1980). We find that the evidence was sufficient to support the judgment below.

### II.

Dineen contends he was deprived of due process of law because the information filed by the Board of Overseers included, in the form of exhibits, the Grievance Commission report and the tape and transcript of the hearing before the Commission. We agree that such a procedure is irregular, and that neither the proceedings before the commission nor the Commission's report to the Board of Overseers was germane to the proceeding before the single justice. Nevertheless, by the inclusion of these exhibits, the Board was not in any way relieved of its burden "of proving by a preponderance of the evidence the charges

---

**3.** In its order, the court also noted that, within six months prior to the Toussaint trial, Dineen was suspended for three months as a result of his falsification of a writ of attachment. The court observed that, "[s]adly, events have proved the error in the court's assessment of the

efficacy of a mere suspension .... Nothing less than disbarment will protect the public and the courts in the case at bar."

**4.** *See Dunton v. Eastern Fine Paper Co.,* 423 A.2d 512 (Me.1980).

specified in the information." M. Bar R. 7(e)(6)(C). A judge acting as a factfinder is often required to differentiate between competent and incompetent evidence and exclude the latter from consideration. There is no indication in the record that the presiding justice in this case failed to use his own judgment, nor does Dineen offer anything to disturb the presumption raised clearly by the language of the order, that the court based its determination solely on the competent evidence before it. This contention is therefore without merit.

 In addition, Dineen argues that his "compelled" testimony at the post-conviction hearing violated his right against self-incrimination, since the information contained in that testimony led ultimately to his disbarment. This argument also lacks substance. Article I, section 6, of the Maine Constitution provides that "[i]n all criminal prosecutions, the accused ... shall not be compelled to furnish or give evidence against himself...." Amendment V to the United States Constitution similarly provides that "[n]o person ... shall be compelled in any criminal case to be a witness against himself ...." Although we have held that the privilege against self-incrimination is "[a]ssertable in any proceeding, civil or criminal, administrative or judicial, investigatory or adjudicatory," *State v. Vickers*, 309 A.2d 324, 327 (Me.1973), the privilege only protects an individual from the use of the testimony against him in a criminal proceeding. It is clear that a disciplinary proceeding cannot be regarded as criminal for the purposes of the Fifth Amendment privilege against self-incrimination. *Goldman v. State Bar*, 20 Cal.3d 130, 141 Cal.Rptr. 447, 570 P.2d 463, 468 (1977);[5] *Black v. State Bar*, 7 Cal.3d 676, 103 Cal.Rptr. 288, 499 P.2d 968, 974 (1972); *Zuckerman v. Greason*, 20 N.Y.2d 430, 285 N.Y.S.2d 1, 5, 231 N.E.2d 718, 721 (1967),

*cert. den.*, 390 U.S. 925, 88 S.Ct. 856, 19 L.Ed.2d 985 (1968), *rehg. den.*, 390 U.S. 975, 88 S.Ct. 1031, 19 L.Ed.2d 1196 (1968). In such a proceeding, which bears only on the attorney's right to continue to practice law, he has no constitutional privilege to prevent his testimony from being used against him. *See Black*, 499 P.2d at 974–5; *Zuckerman*, 231 N.E.2d at 721.

 Assuming, *arguendo*, that Dineen's testimony at the post-conviction hearing tended to incriminate him and did not merely expose him to possible disbarment, he properly could have asserted the privilege against self-incrimination. However, we have held that "the privilege against self-incrimination is a personal one. To be available to a witness it must be claimed and, being but a privilege, it may be waived." *Gendron v. Burnham*, 146 Me. 387, 404, 82 A.2d 773, 784 (1951). We have also held that a trial judge has no affirmative duty to advise witnesses of their privilege against self-incrimination. *State v. Brown*, 321 A.2d 478, 483 (Me.1974); *State v. Fagone*, 462 A.2d 493, 496 (Me.1983). The justice presiding at the post-conviction review, therefore, committed no error in failing to remind Dineen, an experienced practitioner, of his right to assert the privilege. *Cf. Black*, 499 P.2d at 978.

 On the facts of this case, Dineen's objection, on the basis of relevance and attorney-client privilege, did not constitute an assertion of the privilege against self-incrimination, and his failure to claim it resulted in its waiver.

 We are forced to conclude, with the single justice below, that the ultimate sanction of disbarment is warranted in this case. A lawyer practicing before the Maine bar enjoys a privileged status. Upon entering the profession that lawyer

5. We do not, however, endorse any implication in *Goldman* that an attorney may not assert the privilege in a disciplinary hearing if his answer might tend to incriminate him and not merely expose him to discipline.

takes a solemn oath to "do no falsehood nor consent to the doing of any in court," 4 M.R.S.A. § 806 (1979). While the lawyer has a duty to act zealously on his client's behalf, that duty is subject to ethical limitations which the lawyer may ignore at his peril. Among these is the "affirmative obligation to inform the court of the falsity of a client's assertions." *State v. Gilcott,* 420 A.2d 1238, 1240 (Me.1980); *see also* M. Bar R. 3.7(e)(1)(i). In the case at bar, attorney Dineen deliberately elicited false testimony from his client on the witness stand. There is no more egregious violation of a lawyer's duty as an officer of the court, and no clearer ethical breach.

The entry is:

Judgment affirmed.

All concurring.